

EOD
09/13/2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 04-44682 |
| ELIZABETH A. ROHR, | § | |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |
| | § | |
| MICHELLE H. CHOW, Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. 05-04255 |
| v. | § | |
| | § | |
| CYNTHIA MITCHELL, in her official capacity | § | |
| as Denton County Clerk, and | § | |
| ELIZABETH A. ROHR, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION IN SUPPORT OF**
**<u>FINAL JUDGMENT AND INJUNCTION</u>**

On December 6, 2005, Michelle H. Chow (the "<u>Trustee</u>"), the chapter 7 trustee of the bankruptcy estate (the "<u>Estate</u>") of Elizabeth A. Rohr (the "<u>Debtor</u>") filed a COMPLAINT INCLUDING PRELIMINARY AND PERMANENT INJUNCTION (the "<u>Complaint</u>"). In her Complaint, the Trustee sought a permanent injunction (the "<u>Injunction</u>") prohibiting Cynthia Mitchell, in her official capacity as the County Clerk for Denton County, Texas (the "<u>Clerk</u>"), from accepting for filing and/or recording civil filings made by, or on behalf of, the Debtor. The Court granted the Trustee's request for a preliminary injunction following a hearing on February 22, 2006 and issued a PRELIMINARY INJUNCTION (the "<u>Preliminary Injunction</u>").

On July 25, 2006, the Court conducted a hearing on the Trustee's request for an Injunction. The Trustee appeared by and through her counsel, Mark Agee. The Injunction was not opposed by the Clerk, who appeared by and through her counsel, Tom Keever. The

Injunction also was supported by Dr. R. Craig Saunders ("Dr. Saunders"), the Debtor's ex-husband, who appeared by and through his counsel, Mark Petrocchi. The Injunction was further supported by Spectra Land, L.P. ("Spectra"), which appeared by and through its counsel, Davor Rukavina. The Debtor, who appeared *pro* se, opposed the Injunction.[1]

Based on the record, including the record developed at the hearing on the preliminary injunction, and for the reasons stated below, the Court concludes that the Preliminary Injunction should continue and should be made permanent. Pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, the Court's final judgment and permanent injunction is set forth by separate order. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I. JURISDICTION

This matter involves the administration and liquidation of the Estate and, therefore, is a core proceeding over which this Court has jurisdiction to enter a final judgment pursuant to 28 U.S.C. §157(b)(2)(A), (N) and (O). In addition, this Court has jurisdiction over this matter as necessary to enforce and protect the integrity of the Court's prior orders. *See, e.g., Royal Ins. Co. of Am. v. Quinn-I Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1499 (5th Cir. 1993).

## II. BACKGROUND

On October 5, 2004 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code. As of the Petition Date, the Debtor owned, together with Dr. Saunders, a 42 acre piece of real property on Bob Jones Road in Southlake, Denton County, Texas (the "42-acre Property"). Pursuant to a pre-bankruptcy agreement in their

---

[1] In light of the Debtor's incarceration, the Court *sua sponte* arranged for the Debtor appear at the hearing on July 25, 2006, by telephone. The Debtor was afforded a full opportunity to present evidence, to testify, and to cross examine witnesses.

Agreed Final Decree of Divorce issued on July 1, 2003, the Debtor and Dr. Saunders agreed that the 42-acre Property would be sold and the proceeds distributed amongst them.

On March 28, 2005, the United States Trustee filed a motion to convert the Debtor's Chapter 11 case to a liquidation proceeding under Chapter 7 of the Bankruptcy Code "for cause" under §1112(b) of the Bankruptcy Code. On May 26, 2005, this Court entered an order granting the motion, and Michelle H. Chow was subsequently appointed as the Chapter 7 Trustee. By separate adversary proceeding, the Court has denied the Debtor a discharge.

On June 13, 2005, the Trustee filed a motion to sell the 42-acre Property (the "Sale Motion"), which the Debtor opposed. On August 2, 2005, after notice and a hearing, this Court entered an ORDER GRANTING MOTION TO SELL BOB JONES REAL PROPERTY FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS AND ENCUMBRANCES AND TO APPROVE SALE PROCEDURES (the "Sale Order").

The Sale Order authorized the transfer of the 42-acre Property Spectra free and clear of all liens, claims, and encumbrances (with any liens, claims and encumbrances attaching to the proceeds of the sale). Among other things, the Sale Order ordered the Debtor not to interfere with the transfer of property, to vacate the 42-acre Property, and to remove all of her personal property from the 42-acre Property.

The Debtor failed to comply with the Sale Order. Accordingly, on August 24, 2005, the Trustee, Dr. Saunders and Spectra filed their EMERGENCY JOINT MOTION FOR AN ORDER: (A) HOLDING THE DEBTOR IN CIVIL CONTEMPT; (B) ORDERING SANCTIONS AGAINST THE DEBTOR; (C) COMPELLING DEBTOR'S COMPLIANCE; (D) GRANTING WRIT OF POSSESSION AND OF EXECUTION; AND (E) ORDERING ASSISTANCE OF UNITED STATES MARSHAL (the "First Contempt Motion"). On September 2, 2005, after notice and a hearing, this Court entered an order finding the Debtor in civil contempt of the Sale Order and ordering the United States Marshals Service to forcibly

remove the Debtor and her personal property from the 42-acre Property (the "First Contempt Order").

Contemporaneously with the filing of First Contempt Motion, the Trustee, Dr. Saunders and Spectra filed their MOTION FOR APPROVAL OF AMENDMENTS TO: (A) FARM AND RANCH CONTRACT, AND (B) ORDER GRANTING MOTION TO SELL BOB JONES ROAD PROPERTY FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS & ENCUMBRANCES AND TO APPROVE SALE PROCEDURES seeking authority to reduce the negotiated sale price by $300,000 to $400,000 (depending on the closing date) for the delay in closing caused by the failure of the Trustee and Dr. Saunders to deliver the property free of the Debtor, her possessions, and her livestock. On September 2, 2005, after notice and a hearing, this Court entered an order approving the reduction in sale price.

Notwithstanding the Sale Order and the First Contempt Order, the Debtor continued to assert that the sale to Spectra was invalid or not binding as to her. On or about September 13, 2005, the Debtor caused to be recorded a lis pendens against the 42-acre Property in the Denton County public records (the "Lis Pendens").

The recording of the Lis Pendens clouded title to the 42-acre Property and prevented Spectra from obtaining financing to develop the property. Accordingly, by motion filed October 27, 2005, Spectra requested that (i) the Court hold the Debtor in further civil contempt, (ii) order the Debtor to release the Lis Pendens, and (iii) confine the Debtor in custody until she released the Lis Pendens.

On November 8, 2005, after notice and a hearing, this Court entered its ORDER FINDING ELIZABETH ANN ROHR IN CONTEMPT OF COURT AND DIRECTING THE UNITED STATES MARSHAL TO TAKE CUSTODY OF AND DETAIN ELIZABETH ANNE ROHR UNTIL CIVIL CONTEMPT IS PURGED

(the "Second Contempt Order").  In the Second Contempt Order, the Court ordered the Debtor to be incarcerated until she purged her civil contempt.

The Debtor refused to release the Lis Pendens and remained incarcerated for a total of 74 days.  Ultimately, on January 10, 2006, the Court determined that the Debtor would not release the Lis Pendens.  The Court, therefore, declared the Lis Pendens void and ordered that the Lis Pendens be cancelled and/or stricken from the public record.

The United States District Court for the Eastern District of Texas has, upon the referral of this Court, convicted the Debtor for criminal contempt related to, among other things, the filing of the Lis Pendens.

In addition to the Lis Pendens, the Debtor has recorded at least 50 instruments totaling nearly 900 pages in the Denton County public record since 2001.  Notably, at least 37 of these instruments were filed after the Petition Date.  Of the 37 instruments filed after the commencement of this case, at least ten instruments were filed after the entry of the Sale Order. Additionally, certain of these filings violate the automatic stay imposed by §362(a) of the Bankruptcy Code by asserting causes of action and rights which are property of the Estate.[2]

Under the laws of the State of Texas, the Clerk is charged with accepting, filing, recording and keeping the public real property records for Denton County, Texas.  In discharging that duty, the Clerk accepts for filing or recordation all documents in proper form without regard to the merits of the substantive rights asserted in the documents presented for filing and/or recordation.  The Clerk has no authority or ability to determine whether the filing or recordation

---

[2] The filings may also violate state law.  *See* TEX. CIV. PRAC. & REM. CODE §12.002 (providing in relevant part that a person may not make, present, or use a document with (i) knowledge that it is fraudulent record or lien claim, (ii) intent that it be given the effect of a proper legal record or claim, and (iii) intent to cause injury). *See also*, TEX. PEN. CODE §§ 32.48 and 32.49.

**MEMORANDUM OPINION IN SUPPORT OF**
**FINAL JUDGMENT AND INJUNCTION - Page 5**

of an instrument violates an order of this, or any other, Court or to assess the substantive merits of a filing.

The Clerk has abided by the Preliminary Injunction without any difficulty. The Preliminary Injunction has not restricted the ability of parties (other than the Debtor) to use the services of the Clerk.

### III. ANALYSIS

The elements of a permanent injunction are the same as those applicable to a preliminary injunction, except that the plaintiff must show actual as opposed to likely success on the merits. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 (1987). Thus, the plaintiff must prove "(1) actual success on the merits; (2) a substantial threat of irreparable injury to the plaintiff if the injunction is not granted; (3) the irreparable injury threatened to the plaintiff must outweigh the threatened injury of any injunction to the defendant; and (4) the granting of the permanent injunction must not disserve the public interest." *Sierra Club v. Glickman*, 974 F. Supp. 905, 943 (E.D. Tex. 1997).

### A. Success on the Merits

The Trustee has actually succeeded on the merits of her complaint. The Debtor's rights and interests in the 42-acre Property arise out of her co-ownership of the property with Dr. Saunders. At the time of the bankruptcy filing, these rights were governed by and subject to the limitations set forth in the Agreed Final Divorce of Decree and the other orders entered by the 211th Judicial District Court for Denton County, Texas, in connection with the Debtor's divorce proceeding. Upon the filing of the bankruptcy case, the Debtor's interest in the 42-acre Property, her alleged claims against Dr. Saunders, and all other interests of the Debtor became property of the Estate. *See* 11 U.S.C. §541(a). When the case was converted to a Chapter 7 proceeding, the

Debtor's ability to administer and liquidate property of the Estate ceased – the Trustee succeeded to such power and authority.

Pursuant to the Sale Order, the 42-acre Property was sold to Spectra free and clear of all liens, claims, or other encumbrances, with such liens, claims, and encumbrances to attach to the proceeds. *See* 11 U.S.C. §363(f). The Sale Order is a final order.[3] Therefore, the Debtor no longer has any claim, right, or interest in or to, the 42-acre Property. All liens claims and encumbrances evidenced by the Debtor's filings with the Clerk (to the extent such filings are valid and enforceable against the property) are now attached to the proceeds from the sale of the 42-acre Property pursuant to the terms of the Sale Order.

Nonetheless, the Debtor has continued to file documents in the public record relating to the 42-acre Property. The Debtor's filings violate the Sale Order as well as the subsequent Contempt Orders. The intended purpose of many of the Debtor's filings is difficult to discern, but the mere recordation of the documents has caused significant confusion in the public record and hindered Spectra, the property owner's, attempt to obtain financing and develop its property.

In addition, the Debtor asserted at the hearing on the Preliminary Injunction that she believes that she has a current interest in the 42-acre Property and that her actions are calculated to protect that interest. When questioned as to whether or not she will file any lis pendens against the 42-acre Property in the future, the Debtor stated that she understood this Court had

---

[3] On August 5, 2005, the Debtor filed an appeal with respect to the Sale Order (the "First Appeal"). The First Appeal was assigned Civil Action No. 4:05CV353 by the United States District Court for the Eastern District of Texas (the "District Court"), and by order entered September 15, 2005, the District Court dismissed the First Appeal for failure to comply with the requirements necessary to perfect an appeal. On September 29, 2005, the Debtor filed an appeal of all rulings and orders of this Court (the "Second Appeal"). The Second Appeal was assigned Civil Action No. 4:05CV413 by the District Court, and by order entered November 8, 2005, the District Court dismissed the appeal for not being timely and for failure to comply with the requirements necessary to perfect an appeal. On November 8, 2005, the Debtor filed six appeals, five of which were from all rulings and orders of this Court. The first of this series of appeals [Docket No. 272] was assigned Civil Action No. 4:05CV463 by the District Court (the "Third Appeal"). On December 9, 2005, the District Court issued an order dismissing the Third Appeal on the grounds of bad faith and flagrant abuse of the judicial process. The District Court also enjoined the Debtor from filing any action in the District Court without leave of the Chief Judge of the District Court, and dismissed all other appeals from orders of the Bankruptcy Court.

**MEMORANDUM OPINION IN SUPPORT OF**
**FINAL JUDGMENT AND INJUNCTION - Page 7**

ordered her not file any lis pendens, but she could not promise that she would not file other documents in the public record to protect her purported rights and interests in the 42-acre Property. Indeed, shortly thereafter, despite numerous orders, despite pending criminal contempt charges, and despite her prior confinement for civil contempt, the Debtor initiated a state court lawsuit against numerous parties seeking, among other things, a judgment that she (or one of her entities) owns the 42-acre Property.[4]

The Debtor has demonstrated a willingness to flaunt and deliberately disregard this Court's orders relating to the 42-acre Property. For example, notwithstanding this Court's various Contempt Orders and the Debtor's resulting incarceration, the Debtor refused to voluntarily purge herself of her contempt by removing the Lis Pendens. The Debtor has continued to assert an ownership interest in the 42-acre Property despite the sale to Spectra. She has used the Clerk as an instrumentality to assert her purported interest and to attempt to frustrate the final orders of this Court. Accordingly, based on the evidence presented and the Debtor's own admissions, the Court concludes that the Trustee has prevailed on the merits of the Complaint.

### B. Irreparable Injury

The second inquiry for this Court is to determine whether the Trustee has established that she will suffer irreparable injury if the Injunction does not issue. The Debtor's pattern of filing unnecessary documents in the public record has injured the Estate and will continue to frustrate the Trustee's ability to conclude administration of the Estate. The Estate has already suffered a $400,000 reduction in the sale price of the property, and the Estate will continue to incur costs,

---

[4] That lawsuit was removed by Spectra, among others, to the United States Bankruptcy Court for the Eastern District of Texas. In July 2006, another Judge of this Court dismissed with prejudice the Debtor's complaint and enjoined her from filing any complaint or proceeding in any court related to the 42-acre Property, absent prior permission from that Judge.

both directly (as a result of the continuous litigation and prosecution of the Debtor's violation of this Court's orders and the Bankruptcy Code) and indirectly (as claims against the Estate which are likely to be asserted by Dr. Saunders and Spectra for reimbursement or compensation for the injuries they have incurred) as a result of the Debtor's actions.[5]

In addition to the injury to the Estate, the filings have caused irreparable injury to Spectra. Spectra purchased the property for the purpose of developing it but was not able to obtain financing because of the confusion in the public record created by the Debtor's filings. The harm caused from Spectra's inability to develop its property is irreparable and unquantifiable. Spectra's injuries will continue as long as the public record remains subject to interference by the Debtor. Only the issuance of the Preliminary Injunction has enabled Spectra to proceed with any plans regarding the 42-acre Property.

The Debtor's filings also have caused irreparable injury to Dr. Saunders. Dr. Saunders has expended significant personal financial resources, his medical practice has been interrupted, his patients and their families have had to reschedule operations, and he and his family have suffered personal stress and inconvenience as a result of the continued filing of frivolous instruments in connection with the 42-acre Property and the Debtor's failure to comply with this Court's orders.

These harms will continue to accrue against the parties until the Debtor ceases to file frivolous documents in the public record relating to the 42-acre Property. The parties have attempted to induce and/or compel the Debtor to comply with the Sale Order and refrain from interfering with Spectra's ownership of the 42-acre Property, but the Debtor has not ceased her pattern of filing inappropriate and misleading documents in the public record. Neither monetary

---

[5] In fact, on July 24, 2006, Spectra filed an application for an administrative claim in the approximate amount of $65,000.00.

**MEMORANDUM OPINION IN SUPPORT OF**
<u>**FINAL JUDGMENT AND INJUNCTION**</u> **- Page 9**

damages, denial of her discharge, a 74-day incarceration for civil contempt, nor the threat (and now conviction) of criminal contempt, has had any apparent influence on the Debtor. Based on the foregoing, this Court concludes that second element of the standard for determining the appropriateness of injunctive relief has been met. The Trustee, Spectra and Dr. Saunders have suffered irreparable injury from the Debtor's actions, and such injuries will continue if the Injunction does not issue.

### C. Balancing of the Harms

The next element for this Court to review is whether the harm to be suffered by the movant outweighs the harm to be imposed upon the Debtor if the Injunction is granted. The Court has already ordered the Debtor (i) not to interfere with the transfer of the 42-acre Property, (ii) not to file any lis pendens with respect to the 42-acre Property, and (iii) to limit her assertion of rights in the property to the proceeds generated from the sale. Thus, to the extent that the Debtor's filings with the Clerk assert rights against the 42-acre Property, they have already been enjoined by previous orders of this Court. The Debtor, therefore, will not suffer any harm or prejudice from the issuance of the Injunction. Moreover, the Debtor's rights with respect to the 42-acre Property, if any, are protected by the Sale Order and the attachment of such rights to the proceeds of the sale.

As to the Clerk, who does not oppose the relief requested, the issuance of the Injunction will not cause her harm or prejudice, so long as the Injunction does not require the Clerk, rather than a judicial officer, to determine whether a document presented for filing violates this Court's orders and Injunction. In fact, the Injunction will assist in preserving the resources of the Clerk and the integrity of the public record. The Clerk can institute internal procedures to ensure compliance with the Injunction at minimal expense and effort, and without affecting the ability of other persons to access her office and the public records.

Based on this Court's observation of the proceedings, the direct testimony of the Debtor, and all of the other evidence before it, this Court concludes that the Debtor has attempted, and continues to attempt, to exercise dominion and control over property of the Estate in violation of the Bankruptcy Code and this Court's prior orders. Issuing another order enjoining the Debtor from the complained of acts would be futile. There being no adequate remedy at law to prevent the Debtor from continuing to file inappropriate and frivolous instruments claiming an interest in the 42-acre Property and purporting to act with respect to other property of the Estate, this Court finds that the Injunction will cause little or no harm or prejudice to either the Debtor or the Clerk, and the injury to be incurred by the Trustee in the absence of an Injunction far outweighs the injury that issuance of the Injunction may cause.

### D. The Public Interest

Finally, the Injunction serves the public interest by (i) promoting the integrity of this Court's orders, (ii) protecting the Estate from the Debtor's unauthorized exercise of dominion and control over property of the Estate, (iii) protecting the Estate from further depletion of assets by the Debtor, in contravention of her creditors' rights and interests, (iv) discouraging misuse of the public record, and (v) preserving the accuracy of the public record.

### IV. CONCLUSION

Accordingly, having found that the Trustee has satisfied her legal and factual burdens, that the Court has jurisdiction to issue the Injunction, that the Clerk does not oppose the issuance of the Injunction, and that the Injunction is necessary to, and preserves, the Estate, the interests of the public, and the integrity of this Court's orders, the Court will issue the Injunction by separate order. To the extent the Debtor has a legitimate, non-frivolous, legally cognizable need for access to the Clerk, the Court will fashion the Injunction such that the Debtor will be able to

file and record documents with the Clerk so long as certain safeguards, namely the issuance of a prior order by a proper court of record, are complied with by the Debtor.

To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

Signed on 9/13/2006

_/s/ Brenda T. Rhoades_ SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE